IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PAUL D. KIMBAL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD GARDEN et al.,<br><br>　　　　Defendants. | **MEMORANDUM DECISION & ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:12-CV-1069-CW<br><br>District Court Judge Clark Waddoups |

　　　　Plaintiff, Paul D. Kimbal, asserts that his rights to be free of cruel and unusual punishment and to due process were violated when Defendants, Utah State Prison (USP) medical staff members, Doctors Richard Garden and Kennon Tubbs,[1] gave him inadequate medical care. Specifically, he asserts that (1) Garden denied him appropriate medical care and fabricated medical records; and (2) Tubbs denied him necessary medication for pain and psychiatric symptoms, downgraded his psychiatric diagnosis, and fabricated medical records. Before the Court is Defendants' Motion for Summary Judgment.

　　　　Defendants filed several exhibits with their summary-judgment motion, including declarations by Defendants Garden, Tubbs, Blaivas and Merrill, and Grievance Coordinator Billie Casper. They also filed hundreds of pages of medical and other prison records relevant to Plaintiff's allegations.

---

[1] Plaintiff also originally named Dr. Alex Blaivas and P.A. Raymond Merrill as defendants but later moved for their dismissal, a dismissal that Defendants stipulated to. (*See* Docket Entry # 40.) These two defendants are therefore dismissed with prejudice and considered no further in this Order.

After Defendants filed for summary judgment, Plaintiff had until March 30, 2015 to respond. Instead, he moved for a stay of the summary-judgment motion, then he moved for summary judgment on April 6, 2015.  The Court has not heard from him since then.  However, because Plaintiff's summary-judgment motion addresses some of the arguments in Defendants' summary-judgment, the Court construes Plaintiff's motion as a response to Defendants' motion. Plaintiff also attached eighty-two pages of documents--primarily medical and grievance records-- to his memorandum in support of his Complaint; and ninety-five pages of documents--many duplicative of the eighty-two pages but also some more recent ones--to his Amended Complaint.

To give Plaintiff the benefit of the doubt, the Court fully considers--in a light most favorable to Plaintiff--the following documentation in its summary-judgment analysis: Plaintiff's documents attached to his memorandum in support of his Complaint; Plaintiff's entire Amended Complaint; Plaintiff's exhibits attached to his Amended Complaint; Plaintiff's motion to stay summary judgment; Plaintiff's motion for summary judgment; and Defendants' *Martinez* report and summary-judgment motion.

## ANALYSIS

### I.     Summary-Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Factual assertions may be supported by

> citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at 56(c)(1).  A primary purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."  *Id.*  Rule 56 requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).  Mere allegations and references to the pleadings will not suffice.  However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

**II.     Statement Of Undisputed Facts**

1.     Plaintiff was housed at USP during all relevant times.

2.     Defendant Garden is Administrative and Clinical Director over health services for the Utah Department of Corrections (UDOC).  He supervised Defendant Tubbs and reviewed Plaintiff's medical records.  (2d Garden Decl.)

3.     Defendant Tubbs is a medical doctor who, along with many other USP and outside medical providers, personally treated and prescribed medication to Plaintiff, between December 14, 2011 and April 3, 2013.  (Tubbs Decl. at ¶¶ 3, 5 & 6.)

4.     On January 28, 2011, Defendant Tubbs treated Plaintiff upon his request to renew a prescription for bipolar medication.  Tubbs determined Wellbutrin was working well but discontinued Neurontin because it is not a good mood stabilizer.  Tubbs instead prescribed Lithium.  (Tubbs Decl. at ¶ 8.)

5.     On March 4, 2011, Plaintiff refused his blister pack of Lithium at the pill line.  (Tubbs Decl. at ¶ 9.)

6.     On or around April 7, 2011, Plaintiff wrote a letter to USP Med Tech Jen requesting that she renew his Neurontin on the "down low," and increase his Tramadol dosage.  Because the request was deemed dishonest, manipulative and indicative of Plaintiff abusing his medication, Defendant Tubbs discontinued Plaintiff's Tramadol prescription.  (Tubbs Decl. at ¶ 10.)

7.     On April 22, 2011, Defendant Tubbs treated Plaintiff upon his request for anxiety medication.  Tubbs suggested changing from Wellbutrin to Paxil or Zoloft--a suggestion with which Plaintiff disagreed.  (Tubbs Decl. at ¶ 11.)

8. On May 18, 2011, Defendant Tubbs referred Plaintiff to Dr. Soni at the University of Utah Medical Center. (Tubbs Decl. at ¶ 12.)

9. On May 25, 2011, Defendant Tubbs saw Plaintiff for depression but postponed treatment until he could get Dr. Soni's report. (Tubbs Decl. at ¶ 13.)

10. On June 3, 2011, Dr. Soni saw Plaintiff, discontinuing his Effexor prescription and restarting Wellbutrin. (Tubbs Decl. at ¶ 14.)

11. On October 11, 2011, Plaintiff filed a grievance against USP medical staff for denying pain medication. The USP "Utilization Review Committee" reviewed Plaintiff's treatment plan and determined Tramadol and Neurontin were not warranted. (Tubbs Decl. at ¶ 15.)

12. On December 13, 2011, Defendant Tubbs told P.A. Merrill not to give Plaintiff Neurontin and Ultram. Merrill prescribed alternative medications. (Tubbs Decl. at ¶ 16.)

13. On December 14, 2011, Plaintiff filed a grievance against Defendant Tubbs in which he alleged that Tubbs had falsified medical records. Tubbs states all his entries into Plaintiff's medical records were based on his observations and medical opinions during medical visits. (Tubbs Decl. at ¶ 17.)

14. On November 3, 2012, Tubbs reviewed Plaintiff's demand for Ultram or surgery on his hips. After reviewing his record, including medications and x-rays, Tubbs denied the request. (Tubbs Decl. at ¶ 18.)

15. On April 4, 2013, Tubbs placed a hold on Plaintiff's Neurontin prescription due to Plaintiff's past misuse of Neurontin. He made a note that other medications would be more appropriate. (Tubbs Decl. at ¶ 19.)

16.     Since 2011, Plaintiff has not had a medical condition requiring emergency care, hospitalization, major surgery or other substantial procedures. His health status has not been critical or acute and has generally been stable. (Tubbs Decl. at ¶ 23.)

### III.    Personal Participation

To validly state a claim against a defendant in a § 1983 action, a plaintiff must allege the personal participation of the defendant in violating the plaintiff's federal constitutional rights. *Anaya v. Crossroads Managed Care Sys, Inc*., 973 F. Supp. 1228, 1248 (D. Colo. 1997), *rev'd on other grounds*, 195 F.3d 584 (10th Cir. 1999); *see also Bennett v. Passic*, 545 F.2s 1260, 12162-63 ("Personal participation is an essential element in a § 1983 claim."). The plaintiff must assert an affirmative link between the violation and the defendant's actions. *Id*.

Further, it is well settled in the Tenth Circuit that "[u]nder § 1983, government officials are not vicariously liable for the misconduct of their subordinates." *Serna v. Colo. Dep't of Corrs*., 455 F.3d 1146, 1151 (10th Cir. 2006). Supervisors are liable only "for their own culpable involvement in the violation of a person's constitutional rights." *Id*. Section 1983 liability is not available under the doctrine of *respondeat superior*. *Monell v. New York City Dept' of Social Servs*., 436 U.S. 658, 691-692 (1978). For a plaintiff to simply state that a defendant is a supervisor will not suffice to state a claim; "supervisor status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

Defendant Garden oversees the administration and delivery of medical services to inmates throughout the USP population. Plaintiff has not even alleged, nor do any of the records filed with this case show, that Defendant Garden participated in any sick calls or personally prescribed medication or treatment for Plaintiff. The Court then assumes that Plaintiff named Defendant Garden simply because of his supervisory role over USP's medical personnel.

However, his supervision, minus "'exercise of control or direction'" as to Plaintiff's specific case, is insufficient to sustain a claim against him. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)). There is no allegation or evidentiary support for the possibility that Defendant Garden deliberately or intentionally acted toward Plaintiff. *See Dodds v. Richardson*, 614 F.3d 1185, 1196 n.4, 1209 (10th Cir. 2010) (Tymkovich, J., concurring). Further, the allegation that Defendant Garden fabricated medical records is completely unspecified and unsupported. Accordingly, Defendant Garden cannot be held responsible, either personally or vicariously, for violating Plaintiff's constitutional rights. Plaintiff's claims against Defendant Garden fail as a matter of law and are dismissed.

### IV. Inadequate Medical Treatment

To prove that Defendant Tubbs violated his Eighth Amendment right to adequate medical treatment, Plaintiff must present admissible evidence showing that Defendant Tubbs acted with deliberate indifference to a serious harm—e.g., that he intentionally failed to respond to Plaintiff's obvious need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A defendant must have a sufficiently culpable state of mind to be termed "deliberately indifferent." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). And, the defendant's "state of mind" is evaluated from a subjective standard: "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard applied in Eighth Amendment cases equates with the "subjective recklessness" standard of criminal law. *Id*. at 839-40.

Based on the uncontroverted evidence, which the Court has thoroughly reviewed-- declarations provided by Defendant Tubbs and other prison staff members and over a hundred

pages of medical and prison records--this Court cannot term Defendant Tubbs deliberately indifferent to Plaintiff's need for medicine and treatment.  To the contrary, on every sick visit of record that they had together, Defendant Tubbs prescribed medication, reviewed dosages, and documented reasons when he discontinued or did not prescribe medication.  The record shows that Defendant Tubbs discontinued prescriptions for Tramadol and Neurontin, but this was after he documented the concern that Plaintiff had sent a letter to Jenn asking for medication on the down low, indicating potential manipulation and abuse.  Even then, Tubbs generally offered some alternative medication, which Plaintiff apparently eschewed.

Far from "deliberate indifference"--"the unnecessary and wanton infliction of pain"-- the record over many sick visits shows Defendant Tubbs ensuring medication for complained-of pain and depression and anxiety every time, unless he documented a reason why not.  *Estelle*, 429 U.S. at 104 (quotation marks & citation omitted).  It may not have been the exact medication or dosage Plaintiff wanted, but the medical care was uniformly adequate in that Plaintiff's expressed need for help with pain and depression and anxiety was consistently treated by Defendant Tubbs and the rest of USP's medical staff or outside providers.  Plaintiff has not even disputed this--either by unsupported or supported allegations.

Plaintiff's whole point is that he, as an unqualified layperson, wanted more or different treatment from a medical professional, Defendant Tubbs.  Plaintiff has not produced any evidence that Defendant Tubbs, with full knowledge of the deleterious effects of his actions or inactions, outright ignored or even exacerbated any possible serious medical needs of Plaintiff.  This is assuming Plaintiff's needs could even be termed as serious, considering the record of Plaintiff's nearly constant sick visits with a variety of personnel, who unvaryingly provided access to medical professionals and medications for pain and psychiatric symptoms.  *Id.*. at 107

(stating that, when inmate contended "that more should have been done by way of diagnosis and treatment" and "suggest[ed] a number of options that were not pursued, that was "a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment"). As a matter of law, Defendant Tubbs's treatment of Plaintiff, as it is set forth in documentation provided by both parties simply cannot be said to "offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*. at 106.

Finally, the allegation that Defendant Garden fabricated medical records is completely unspecified and unsupported. And, Plaintiff's due-process claim is not fleshed out enough to further consider. The claims against Defendant Tubbs are therefore also dismissed.

## CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. This case is **CLOSED**.

DATED this 30th day of September, 2015.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge